IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

WILLIAM R. FORD, )
 )
    Plaintiff, )
 )
 ) CIV-10-468-D
v. )
 )
MICHAEL J. ASTRUE, )
  Commissioner of Social Security )
   Administration, )
 )
    Defendant. )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his concurrent applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

In Plaintiff's applications filed with the agency on August 23, 2006, Plaintiff alleged that he became disabled on September 23, 2003. (TR 86-88, 89-91). Plaintiff stated that he

1

was disabled due to "4 bad discs" in his neck, "pinched nerves," "problems" with his feet, hands, back, legs, high blood pressure, and headaches. (TR 103). Plaintiff indicated he had a high school education and previously worked as a bricklayer. He stated that he stopped working due to his impairments on September 1, 2003. (TR 103, 104, 107). In a later report, Plaintiff stated he had been diagnosed with hepatitis C viral infection. (TR 109).

Plaintiff's applications were denied initially and on reconsideration. (TR 43-46). At Plaintiff's request, a hearing *de novo* was conducted on July 8, 2008, before Administrative Law Judge Parrish ("ALJ") at which Plaintiff and a vocational expert ("VE") testified. (TR 23-42). Following this hearing, the ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 15-22). The Appeals Council declined to review this decision (TR1-3), and Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Plaintiff's Claims

Plaintiff contends that the ALJ's assessment of his residual functional capacity ("RFC") is not supported by substantial evidence. In connection with the RFC assessment, Plaintiff contends that the ALJ erred in discounting the credibility of Plaintiff's subjective statements concerning the severity of his pain and limitations. Finally, Plaintiff contends that there is not substantial evidence to support the ALJ's decision that Plaintiff is not disabled, particularly in light of the ALJ's improper rejection of testimony by the VE regarding the availability of jobs. Defendant Commissioner responds that no error occurred with respect to the ALJ's evaluation of the evidence and that substantial evidence in the record supports

the Commissioner's decision.

III. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

3

continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2010); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

IV. Reopening of Prior Application

The record shows that Plaintiff filed a previous application for disability insurance benefits and that an initial decision with respect to that application was rendered on March 10, 2005. (TR 125). Plaintiff did not appeal the prior decision, and his insured status for the purpose of disability insurance benefits expired on September 30, 2007. (TR 17, 124). In the ALJ's decision, the ALJ recognized that Plaintiff had previously applied for benefits and stated he "found no basis upon which any prior determination or decision should be reopened and revised." (TR 15).

In this circuit, the district court's jurisdiction does not extend to the Commissioner's refusal to reopen a claim for disability benefits unless the claimant raises a "colorable constitutional claim." Blair v. Apfel, 229 F.3d 1294, 1295 (10th Cir. 2000)(*per curiam*). Because Plaintiff has not asserted a colorable constitutional claim, this Court does not have

4

jurisdiction to review the ALJ's decision concerning his previous application.[1] Consequently, with respect to Plaintiff's disability insurance benefits claim, the issue is whether Plaintiff was disabled between March 11, 2005 and September 30, 2007, the date on which his insured status expired. See Hamlin v. Barnhart, 365 F.3d 1208, 1213 (10th Cir. 2004)(noting relevant period for disability insurance claim began day after adjudication on prior application and ended on last insured date).

V. Medical Record

The medical record shows Plaintiff sought medical treatment the day after he reportedly "tripp[ed] over the lip of a handicap ramp" at his job and "fell[ ] on his left side on concrete." (TR 196). Plaintiff was examined on September 25, 2003, and the physician's assistant ("PA") who examined Plaintiff noted that he exhibited some cervical spinal and left shoulder tenderness but full range of motion and a normal gait. (TR 197). X-rays of Plaintiff's cervical and thoracic spines and left shoulder were negative. (TR 197). Plaintiff was treated with anti-inflammatory, muscle relaxant, and narcotic pain medications for cervical and thoracic sprain and left shoulder contusion. (TR 197). Three physical therapy sessions were also prescribed, and Plaintiff underwent a physical therapy evaluation for the injury. (TR 197, 200-202). However, there is no record of follow-up treatment until November 20, 2003, when Plaintiff returned and stated that he felt better but was still "sore"

---

[1] The fact that the ALJ considered Plaintiff's medical records that pre-dated March 11, 2005, does not implicate a reopening of Plaintiff's previous application in view of the ALJ's clear refusal to reopen.

and "not yet 100 %." (TR 188). The examining PA noted Plaintiff exhibited no radicular symptoms and full range of motion. (TR 188). Based on the results of MRI testing, anti-inflammatory medication was prescribed for the diagnostic assessment of cervical neuropathy and cervical disk degeneration. (TR 188-189).

There are no intervening records of treatment of Plaintiff until January 2006 when he requested a prostate examination at a medical clinic. (TR 148). Plaintiff reported at that time that he felt he had been "healthy." (TR 148). In July 2006, Plaintiff sought treatment at the same clinic and complained that he was experiencing pain along the medial side of his left elbow due to his attempt to increase his weight lifting exercises from a 30-pound weight to a 40-pound weight. (TR 149). Plaintiff was treated with a short term course of pain and anti-inflammatory medications for left elbow strain and advised to reduce the weights lifted on the left side for a brief period of time. (TR 149).

In August 2006, Plaintiff sought treatment at the clinic for neck and back pain related to his recent work as a roofer. Plaintiff also stated that he was experiencing occasional hand and arm numbness and pain radiating down his arms and across his shoulders. (TR 151). The examining registered nurse ("RN") noted that Plaintiff exhibited full grip strength and full range of motion, and the RN noted anti-inflammatory and pain medications were prescribed for degenerative disc disease. (TR 151). When Plaintiff returned to the clinic for a follow-up examination a month later, he was examined by Dr. Tran. (TR 152-154). Dr. Tran noted that Plaintiff's MRI testing revealed degenerative disc disease in his cervical spine. Plaintiff complained that his neck pain occasionally radiated to both arms and that the pain medication

previously prescribed was not helping. (TR 152). Dr. Tran noted that Plaintiff was not in acute distress and was "pleasant and cooperative." On examination, Dr. Tran noted that Plaintiff exhibited full range of motion in his neck and extremities, intact pulses and sensation, and normal strength in his upper extremities. (TR 153). Plaintiff was prescribed pain medication for degenerative disc disease. On October 3, 2006, Dr. Tran noted Plaintiff was advised testing showed he had contracted hepatitis C viral infection, although no treatment was prescribed. (TR 154).

Plaintiff underwent a consultative physical examination conducted by Dr. Hall in February 2007. Dr. Hall reported Plaintiff complained of degenerative disc disease in his neck affecting his left arm, chest, and leg with constant numbness and tingling and occasional tingling and numbness in his right arm, chest, and leg. (TR 156). Plaintiff denied neck or back pain and stated he could perform all daily living activities but had to rest. (TR 156). Dr. Hall reported Plaintiff exhibited normal examination findings except for some limitations in extending and flexing his neck, back, and shoulders. (TR 157-162).

Plaintiff returned to Dr. Tran for follow-up treatment in January, April, August, and October 2007. (TR 175-178). Plaintiff reported he did not want to undergo surgical repair of his neck because of the cost, and pain medication was prescribed for chronic neck pain. (TR 178). The pain medication was refilled in April 2007 (TR 177), and in August 2007 Dr. Tran noted he informed Plaintiff the narcotic pain medication would be reduced until Plaintiff was "wean[ed] off" of the medication. (TR 176). Although Plaintiff complained in October 2007 that the reduced dosage of narcotic pain medication was "not working for

7

him," Dr. Tran noted he advised Plaintiff to use over-the-counter pain relieving patches on his neck and non-narcotic pain medication "for breakthrough pain." (TR 175). In February 2008, Plaintiff was treated by an osteopathic physician, Dr. Olsen, for injuries sustained to his left forearm after he was assaulted with a bat two weeks previously. (TR 186). Dr. Olsen noted that Plaintiff exhibited full range of motion in his cervical spine, his gait was stable, and he exhibited a tender left arm, decreased range of motion in his left elbow and wrist, and full strength. (TR 186-187). He was treated with a cast for a fractured left ulna. (TR 187). In a follow-up examination two months later, Dr. Olsen noted that x-rays showed the fracture was healing, that Plaintiff exhibited full range of motion of his cervical spine, left elbow and wrist, good grip strength, no neurological deficits, stable gait, and full strength. (TR 184-185). Plaintiff was placed in a splint and advised to return one month later for follow-up evaluation. (TR 185).

VI. Step Four - RFC and Credibility

Plaintiff contends that the ALJ erred in assessing Plaintiff's RFC for work and objects to the ALJ's finding that his complaints of disabling pain and limitations were not fully credible. At the fourth step of the requisite evaluation process, the ALJ is required to determine whether the claimant retains the RFC to perform the requirements of past relevant work. The claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3)

the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

The ALJ found at steps one and two that Plaintiff had not engaged in substantial gainful activity after September 25, 2003, his alleged disability onset date, and that Plaintiff had severe impairments due to degenerative disc disease and hypertension. (TR 17). At step three, the ALJ found that Plaintiff's impairments were not *per se* disabling under the agency's Listing of Impairments. (TR 19). In connection with the step four finding, the ALJ reviewed the medical record and Plaintiff's subjective statements. (TR 17-21). The ALJ found that the medical evidence did not fully support Plaintiff's subjective complaints. The ALJ's specific reasoning is set forth in the decision:

> The medical reports show a history of work-related injury in 2003. After the alleged onset date, the claimant told a treating doctor that he had been working as a roofer and that he had been lifting weights. (Exhibit 1F). Although a consultative examiner reported degenerative disc disease, examination was basically normal with the exception of some minimal range of motion limitations. (Exhibit 2F). Non-examining State agency doctors

9

> were of the opinion the claimant could perform medium work. . . . Although a treating doctor has been reducing the amount of pain medication prescribed for the claimant, the significant adverse side effects alleged by the claimant at the hearing have not been shown in the medical reports. Some time after the alleged onset date, the claimant was involved in an altercation in which he sustained an arm injury. (Exhibit 7F). There is no indication that such injury, or any of the claimant's impairments or symptoms, have resulted in inability to work for any extended period of time.

(TR 20).[2]

Plaintiff testified at his hearing (TR 25-36), *inter alia*, that because of neck pain and arm and leg numbness and tingling he must lie down "almost all day long" and could sleep only 1½ hours at a time before being awakened by pain. Plaintiff also testified that he did not drive because his medications made him drowsy, that he slept about fourteen hours a day, and that he could perform home maintenance or cooking activities for only about 10 minutes at a time before needing to lie down to rest. Plaintiff estimated he could sit about 15 minutes before his legs became numb and tingly, that he could stand only 20 minutes at a time, that he could walk only about 100 yards, and that he could lift only a half-gallon container.

The sparse medical record in this appeal is not consistent with Plaintiff's subjective statements of extreme functional limitations stemming from his neck and hypertension impairments. Nor is the record consistent with Plaintiff's statements that he is unable to drive or stay awake except for brief periods during the day due to medication side effects. The ALJ's reasoning, which was properly based on inconsistencies between the medical

---

[2]The remainder of the ALJ's rationale is non-specific, boilerplate language.

record and Plaintiff's statements, is supported by substantial evidence in the record. Hence, the credibility determination should not be disturbed.[3]

The ALJ found that Plaintiff had the RFC to perform work at the light exertional level except for work requiring rotating the head to the right or left on a frequent basis or requiring the performance of intricate work with the fingers (such as picking or pinching) on a frequent basis. (TR 19). Plaintiff refers only to his subjective statements as support for his assertion that he is not capable of performing any work activity. However, "'disability' requires more than the mere inability to work without pain." Wall v. Astrue, 561 F.3d 1048, 1068 (10th Cir. 2009); see also Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989). The ALJ discussed the relevant medical evidence and acknowledged that Plaintiff's cervical degenerative disc disease would result in limitations with respect to certain head and fine finger movements. The medical record reflects that Plaintiff has infrequently sought treatment for his complaints of pain and numbness, and that only conservative measures, including pain medication, have been prescribed. Although Plaintiff contends that his lack of treatment was due to his lack of income and access to medical care, the medical record is consistent with the ALJ's RFC finding. No doctor has stated that Plaintiff is disabled or placed any limitations upon Plaintiff's ability to work. Physical examinations of the Plaintiff consistently showed that

---

[3]The ALJ did not, as Plaintiff suggests, rely on Plaintiff's statement that he had been assaulted as a reason to diminish the credibility of his subjective allegation of disabling pain and limitations. Rather, the ALJ noted that the medical record did not reflect that the injuries sustained by Plaintiff in this assault rendered him unable to work for any extended period of time. The medical record supports this finding.

he retained full or nearly full range of movement in his neck and upper extremities, that his gait was stable, that he had no decrease in grip strength or strength in general, and he did not exhibit neurological deficits. The ALJ's RFC assessment is supported by substantial evidence in the record, and no error occurred in the ALJ's evaluation of the medical and non-medical evidence in the record.

VII. Step Five - Reliance on VE's Responses to Hypothetical Questions

Plaintiff contends that there is not substantial evidence to support the ALJ's step five decision that he is not disabled. At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient RFC . . . to perform work in the national economy, given her age, education and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted). At step five, the ALJ relied on the testimony of the VE at the administrative hearing to support the finding that jobs are available in the national economy which Plaintiff can perform, given his RFC and vocational attributes.

At Plaintiff's hearing, the ALJ asked the VE to identify jobs available for an individual with Plaintiff's vocational characteristics and with the RFC for light work which did not require more than frequent fine finger manipulations or frequent rotation of the head to the right or left. (TR 38-39). The VE responded that such an individual could perform the jobs of inspector of light fixtures, inspector of clocks and watches, "return to factory" clerk, and assembler. (TR 39-40). The ALJ then asked the VE to identify jobs available for an individual with chronic and severe neck pain radiating into the left side and the arms who

"would be unable to maintain presence at a workstation for a full eight-hour day," "would be required to rest or recline two to three hours a day" due to pain and discomfort, and would "possess an approximate 20 percent reduction in concentration capability . . . ." (TR 40-41). The VE responded that no work would be available for such an individual.

The ALJ was not required to accept the answer to a hypothetical question that included limitations "claimed by the plaintiff but not accepted by the ALJ as supported by the record." Bean v. Chater, 77 F.3d 1210, 1214 (10th Cir. 1995). The ALJ found that Plaintiff's RFC for work included the ability to perform light work with some limitations in head movement and fine finger manipulation. The ALJ was not required to accept the VE's responses to hypothetical questioning that included limitations not found to be supported by the record. No error occurred in this regard.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____July 25th\_\_\_\_, 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's

recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   5th   day of   July  , 2011.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE